UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME RATE PREMIUM FINANCE
CORPORATION,

        Plaintiff,                                Case Number 14-12397
                                                      Honorable David M. Lawson

v.

KEITH A. LARSON, KAREN E.
LARSON, and BRANDON E. LARSON,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT
BRANDON LARSON'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR LEAVE
TO FILE A SECOND AMENDED COMPLAINT**

        The question presented by defendant Brandon Larson's motion for summary judgment now before the Court is whether the plaintiff has presented any evidence that Brandon committed or aided his parents, Karen and Keith Larson (owners and operators of Larson's Insurance Solutions, Inc.) in perpetrating the fraudulent scheme described in the amended complaint.  The scheme consisted of presenting phony insurance premium finance applications to the plaintiff, not applying those loan proceeds to pay for the insurance policies, and pocketing the money instead. The plaintiff seeks to tie Brandon into the scheme on two theories.  First, it argues that Keith Larson appointed Brandon as a "Designated Licensed Responsible Producer" of the Larson insurance agency, and therefore Brandon is responsible for the agency's conduct as a matter of law.  Second, it points to certain premium finance agreements that Brandon signed, and to other activity that supposedly was intended to further the fraudulent scheme, as evidence of Brandon's actual participation.  However, except in two instances, neither the law nor the evidence supports the plaintiff's claims against

Brandon Larson, and therefore the Court will grant in part his motion for summary judgment. The plaintiff also seeks leave to amend its complaint a second time to add allegations that Brandon supervised the fraudulent activity at the agency. But the amendment comes too late, and it would be futile, because the evidence does not support the conclusory allegations proposed by the amendment. The motion to amend, therefore, will be denied.

I.

A.

Larson's Insurance Solutions, Inc., known by the acronym LISA, was formed by Keith Larson in 2005. Keith Larson was the president, secretary, treasurer, and director, but according to Brandon Larson, Karen Larson was really the person in charge of LISA. The Larsons formed the company to sell insurance products.

Michigan insurance law requires any business acting as an insurance producer to designate at least one "individual licensed producer responsible for the business entity's compliance with this state's insurance laws, rules, and regulations." Mich. Comp. Laws § 500.1205(2)(b). That designation usually is made on the application form, FIS-0202, which lists the "Designated/Responsible Licensed Producer," or DRLP. More than one person may be listed. Keith Larson submitted an FIS-0202 form on April 25, 2005, listing five individuals as DRLPs, including himself, Karen, and Brandon. Brandon Larson argues that the form lists him only as a "producer," which is a term broadly defined under Michigan law to include any person or entity that assists in procuring an insurance policy. Mich. Comp. Laws § 500.1451. But Keith Larson's FIS-0202 plainly listed Brandon as a DRLP. Michigan's Department of Insurance and Financial Services

(DIFS) apparently took that information and incorporated it into its data base, which identifies Brandon Larson as one of LISA's DRLPs.

Brandon asserts that he never agreed to serve as a DRLP for LISA, and Keith listed him as such without Brandon's permission. Keith signed an affidavit confirming that. The plaintiff has not produced any evidence to the contrary, although it argues that the Court should disregard Keith's affidavit because he suffers from dementia and was not competent to sign it in August 2016. Individuals can be added or removed from the state's records of official positions at an insurance agency by submitting form FIS-0200. The form has a spot for the signature of a person to be added as a DRLP, signifying acceptance of that responsibility. LISA filed several FIS-0200s over the years, but none of them mentioned Brandon or contained his signature.

There is no dispute that Brandon is a licensed insurance producer in Michigan. He began pursuing his insurance license while he was in college and obtained it in September 2005. There also is no dispute that LISA employed Brandon. While employed there, he sold and serviced property and casualty insurance policies.

Brandon describes LISA as Karen Larson's company, although it was managed by Joanna Dellin. LISA's organizational chart shows Karen at the top of the chart, immediately followed by Joanna Dellin (Agency Manager), who is followed by Greg Winay (Commercial Lines Director/Director of Operations). Keith Larson appears to be on the same level as Karen, but he was responsible only for life and health insurance; he had no subordinates at the time the chart was created. Brandon is shown to be subordinate to Greg Winay for commercial lines compliance, and otherwise subordinate to Karen Larson directly. The chart shows that Brandon had one subordinate:

account manager Janice Reed. Brandon testified that he had an assistant during 2013 and 2014, first Martha Bledsoe and later Nancy Gandolfi.

B.

Plaintiff Prime Rate describes itself as a premium financing company. It loans money to applicants to pay insurance premiums when the insurance companies will not give favorable financing terms to those persons or entities who want to buy insurance. The loans are documented in the form a premium finance agreement (PFA). This case concerns fourteen PFAs that LISA submitted to Prime Rate purportedly to finance insurance premiums for LISA's customers.

Under the terms of the PFAs, Prime Rate sent the full amount of the insurance premiums to LISA with the understanding that the funds would be forwarded to the insurance provider to pay the premiums in full for one year of coverage. LISA's client (the insured) would then make monthly installment payments to Prime Rate until the loan was paid.

Prime Rate alleges that Karen and Keith Larson committed fraud when they submitted the fourteen PFAs entered into in 2013 and 2014. It alleges that some of the PFAs were forged, some clients did not need a PFA (because they paid their premiums in full), LISA received funds from Prime Rate but did not forward the payments on to the insurance companies, the insurance policies did not exist, and LISA obtained more than one PFA on the same insurance policy. As a result of the fraudulent scheme, Prime Rate did not receive payment of $321,510.16.

It appears undisputed that a fraud was perpetrated. But Karen and Keith Larson contend that they were not responsible for it, insisting that it was the work of one or more of their rogue employees. The plaintiff contends that Karen and Keith were the masterminds behind the scheme, and that Brandon had a hand in it as well.

Findings from a Michigan DIFS investigation implicate Keith and Karen in the scheme. DIFS issued a report on May 14, 2015 that stated:

> Respondents Keith L. and Karen L. have provided justification for suspension and revocation of licensure by using fraudulent and dishonest practices and/or demonstrating untrustworthiness, incompetence and financial irresponsibility in the conduct of business by:
> a. Accumulating significant debts with premium finance companies;
> b. Causing policy coverages to lapse for nonpayment of customers' premium;
> c. Concealing their misconduct from insureds, insurers, and premium finance companies by providing false information;
> d. Failing to remit premium funds to insurers;
> e. Failing to return premium funds to premium finance companies when the funds were not used for intended purposes;
> f. Forging customers' signatures on premium finance applications;
> g. Misappropriating customers' personal and business information to obtain premium finance loans;
> h. Misappropriating premium funds for personal and business expenses;
> i. Obligating customers to repay premium finance loans they did not authorize or have knowledge of; and
> j. Using the cover of insurance to defraud premium finance companies of funds.

As a result, DIFS revoked Keith's and Karen's producer licenses. Brandon, however, was not involved in the DIFS compliance action and his license was never suspended or revoked.

The plaintiff has not stated any fact allegations in its amended complaint or proposed second amended complaint that Brandon committed any fraudulent act. However, the plaintiff submitted an affidavit from Michelle Riddering, an Insurance Licensing Section Manager for the State of Michigan, stating that the 2005 license application listed Brandon Larson as one of LISA's DRLPs. And Joanna Dellin signed an affidavit stating that during 2013 and 2014, "fraudulent premium financing agreements were being processed at LISA at the direction of Karen Larson," and that she "believe[s] that Brandon Larson was aware" of the fraudulent PFAs. Dellin also stated that she "heard Karen Larson instruct Brandon Larson to pick up premium finance payment coupons from

a LISA customer, Victorian Gardens." She again "believe[s]" that Brandon Larson was aware that the premium finance coupons were issued under a fraudulent PFA. Dellin reasons that if the coupons merely had been issued in error, Victorian Gardens simply could have been told to destroy them. Victorian Gardens, however, was not one of the clients involved in any of the fourteen PFAs alleged in this case to be fraudulent.

Brandon acknowledges that four of his clients were among those involved in the fourteen PFAs: Werner Landscaping, Myers Landscape, Canike Landscaping, and Dockside Supply LLC. He testified that he first became aware that there may have been something wrong with those PFAs in December 2013. Brandon had set up both Werner and Myers to pay their insurance premiums directly to the insurance provider, but someone else set up PFAs on their behalf, he says, and Prime Rate shortly thereafter contacted them for payment.

Both companies contacted Brandon asking about the situation. He says that he immediately contacted both Dellin and Karen Larson asking why his customers' policies had been financed after he had set them up to pay the provider directly. Dellin promptly sent Brandon an email with a payment receipt and instructions to tell the clients that their premiums were not being financed. Brandon agrees that the Werner and Myers policies should not have been financed, and he insists that as soon as he found out that it had happened, he resolved the issue that same day. He testified that Karen Larson also agreed that the policies should not have been financed, and that she allegedly said she would speak with Dellin about it. The plaintiff has not offered any evidence that contradicts those assertions, or that Brandon was involved on procuring the PFAs for those customers.

Although Brandon stated that he seldom produced finance agreements, he admits that he signed the certifications on both the Canike Landscaping Inc. and Dockside Supply LLC PFAs.

-6-

Those PFAs list Canike and Dockside as the respective insureds and LISA as the "Agent/Broker/ Producer." However, Brandon signed the certification as the "Agent/Broker/Producer." The certification section in each PFA states that the

> Agent/Broker/Producer warrants and agrees . . . to hold in trust for [Prime Rate] any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or [Prime Rate] and to pay the monies as well as any unearned commissions to [Prime Rate] promptly upon demand to satisfy the outstanding indebtedness of the Insured.

Those PFAs appear to have been produced legitimately at the time, but Canike's insurance policy was cancelled shortly thereafter, and it obtained coverage from another provider. Dockside allegedly stopped making payments to Prime Rate altogether. Brandon testified that he does not know why Canike's policy was cancelled or why Dockside stopped making payments to Prime Rate. The plaintiff alleges in its amended complaint that it transferred money to LISA based on those PFAs, and $5,483.38 remains owing on the Canike loan and $2,304.53 is still unpaid on the Dockside loan.

Brandon testified that once the PFAs were submitted to Dellin, he did not know how they were processed or handled. He did not have anything to do with depositing checks, making withdrawals, or processing the PFAs. He testified that once a PFA was delivered to Dellin, his responsibility for it ended. He was not an owner or officer of LISA. Except for the certifications that Brandon signed, that evidence appears to be uncontradicted as well.

The plaintiff relies on two more situations that it believes show that Brandon shared responsibility for the fraudulent PFA scheme. At some point, Brandon sent a list of premium finance companies to either Karen Larson or Joanna Dellin because LISA was having problems with premium finance sources. Brandon testified that he became aware of the problem because Dellin

sent out emails stating as much. Brandon's response included a list of links to premium finance companies that LISA was not using at that time.

Additionally, Brandon received some financial assistance from his mother, Karen, during the relevant time period. He testified that she occasionally paid household expenses such as mortgage payments, utility payments, school-related expenses for his children, house cleaning, and lawn care. Karen and Keith also purchased a Mercedes automobile in Keith's name for Brandon to use. Brandon testified that he believed that the car payments were deducted from his LISA paychecks. At that time, Brandon was not allowed to drive a car without a breathalyzer interlock device because of a prior drunk driving conviction. Apparently, Karen purchased the Mercedes in Keith's name to defeat that restriction.

C.

The plaintiff filed its complaint against Keith and Karen Larson on June 6, 2014 alleging four counts: Defalcation (Count I); Fraud (Count II); Conversion (Count III), and Negligent Supervision (Count IV). It filed an amended complaint on July 10, 2015 adding Brandon Larson as a defendant. Discovery concluded on August 11, 2016. Brandon Larson filed a motion for summary judgment on August 25, 2016. Only then did the plaintiff submit a motion for leave to file a second amended complaint on September 19, 2016 to add additional allegations against Brandon Larson.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable

-8-

inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Id.* at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

The amended complaint asserts liability against Brandon primarily based on his status as a DRLP. Brandon argues in his summary judgment motion that there is no evidence that he ever agreed to assume the responsibilities of a DRLP for LISA, and vicarious liability for fraud cannot be predicated on that status in any event. In its response to the motion, the plaintiff interjects an additional theory of liability based on Brandon's own alleged conduct, and it seeks to fortify that theory by obtaining leave to file a second amended complaint. Brandon addresses those arguments in his reply brief and his response to the plaintiff's motion to amend.

A.

The plaintiff's theory that Brandon is liable for the fraudulent scheme because of his status as a DRLP suffers from two defects. First, although his father designated him as a DRLP on the initial licensing application, there is no evidence that Brandon gave Keith permission to list him in that capacity, and there is no evidence that Brandon agreed to assume those responsibilities. The plaintiff argues that the state lists Brandon as one of LISA's DRLPs on it website, but that argument is circular. There is no evidence in this record that the listing came from anywhere other than the 2005 license application. And there is no evidence that Brandon acquiesced in that designation.

Moreover, Keith's affidavit provides evidence to the contrary. But even without that affidavit, the plaintiff has not "ma[d]e an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street*, 886 F.2d at 1479).

Second, even if Brandon were a DRLP, that status does not operate as a matter of law to render him responsible for the broad range of conduct alleged against LISA, Karen, and Keith. The plaintiff relies primarily on Michigan Compiled Laws § 500.1205(2)(b) as imposing liability, arguing that this statute makes "a DRLP . . . responsible for an insurance business entity's compliance with insurance laws, rules, and regulations." Pl.'s Br. in Response to Mot. for Summ. J. at 8. But the plaintiff asks too much of that statute.

Read objectively, section 500.1205(2)(b) imposes duties not on DRLPs, but rather on the insurance commissioner. It states:

> An application for an insurance producer license under this subsection shall not be approved unless the commissioner finds all of the following:
> . . .
> (b) The business entity has designated an individual licensed producer responsible for the business entity's compliance with this state's insurance laws, rules, and regulations.

Mich. Comp. Laws § 500.1205(2)(b). This statute does not impose any obligations on DRLPs or create a right of action for failing to comply with Michigan's insurance laws. It does require designation of a natural person to whom the commissioner can look to ensure compliance as a condition of issuing a license, but the language does not suggest that a benefit to third parties is intended.

The plaintiff acknowledges that no Michigan case holds that section 500.1205(2)(b) creates a private right of action. But the plaintiff points to *B. F. Farnell Co. v. Monahan*, 377 Mich. 552, 141 N.W.2d 58 (1961), in which the Michigan Supreme Court recognized a private civil cause of

-11-

action based on the Builders Trust Fund Act, a criminal statute, reasoning that "[w]hen a statute provides a beneficial right but no civil remedy for its securance, the common law on its own hook provides a remedy, thus fulfilling law's pledge of no wrong without a remedy." *Id.* at 555, 141 N.W.2d at 60. The problem applying that reasoning here is that section 500.1205(2)(b) does not provide "a beneficial right" to anyone. Applying a private remedy in the way that the plaintiff advocates is a bridge too far.

B.

The plaintiff also argues that Brandon's own conduct renders him liable under each of the four counts of the amended complaint. With two exceptions, the evidence does not support that argument.

1.

Count I of the amended complaint alleges a cause of action, which the plaintiff characterizes as "defalcation." Defalcation generally is the misappropriation of funds by one who is entrusted with such funds. Commonly, it is raised as an exception to discharge in the bankruptcy context. *See Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir. 1985) (relying on Mich. Comp. Laws 500.1207(1), the panel held that the insurance agent's failure to remit premiums to the principal was thus held to constitute defalcation while acting in a fiduciary capacity, barring discharge in bankruptcy.); *see also In Re Penick*, 149 F.3d 1184 (6th Cir. 1998) (an "insurance agent's breach of this fiduciary relationship satisfied the requirements of § 17(a)(4) under the old Bankruptcy Act, and rendered the resulting debt non-dischargeable."); *In re Huff*, 124 F.3d 197 (6th Cir. 1997) (table decision) ("It is undisputed that Mr. Huff failed to pay

$113,045.65 in premiums to Lagere. This failure to pay constitutes defalcation, rendering the debt nondischargeable, only if the premiums were trust funds held by Huff as a fiduciary.").

Regardless of the plaintiff's label, it appears that the thrust of the claim is for breach of a fiduciary duty under state law. A breach of fiduciary duty claim under Michigan law has three elements: (1) a duty arising from a fiduciary relationship, (2) a failure to observe that duty, and (3) an injury proximately caused by that failure. *See Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1016 (E.D. Mich. 2014) (quoting *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir. 2002)); *see also Lawyers Title Co., LLC v. Kingdom Title Sols., Inc.*, 592 F. App'x 345, 349 (6th Cir. 2014) (applying Ohio law). Typically in such claims, the most hotly contested element is the first: establishing a fiduciary relationship. *See*, *e.g.*, *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). However, in this case, the plaintiff gets a substantial assist from Michigan Compiled Laws § 500.1207, which states that in the insurance context,

> [a]n agent shall be a fiduciary for all money received or held by the agent in his or her capacity as an agent. Failure by an agent in a timely manner to turn over the money which he or she holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility.

Mich. Comp. Laws § 500.1207(1).

The evidence in this record does not show that Brandon acted as an agent on any of the PFAs *except* the two involving Canike Landscaping and Dockside Supply. For those customers, Brandon signed a certification stating that as an "Agent/Broker/Producer" he "agree[d] . . . to hold in trust for [Prime Rate] any payments made or credited to the insured through or to [him] . . . by the insurance companies or [Prime Rate] and to pay the monies . . . to [Prime Rate] promptly upon demand . . . ." There is no evidence that Brandon signed any of the other twelve PFAs listed in the amended complaint or otherwise was a fiduciary on those twelve accounts. But as to these two PFAs, there

is evidence on each of the elements of the plaintiff's breach of fiduciary claim against Brandon that defeats summary judgment. Prime Rate advanced the funds under the PFAs for Canike Landscaping and Dockside Supply, and they were not applied, for various reasons, to the payment of the insurance premiums, nor were those funds returned to Prime Rate. Brandon agreed to act as a fiduciary of those funds, and the failure to return them to the plaintiff after the policies were cancelled is enough to support the plaintiff's claim against him in count I. Brandon is entitled to summary judgment on this count only as to the other twelve accounts.

2.

Count II of the amended complaint alleges fraud. Under Michigan law, to state a claim of fraud the plaintiff must establish "'(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'" *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 815-16 (1976) (quoting *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919)). The absence of any one of these elements "'is fatal to a recovery.'" *Ibid*.

The plaintiff argues that Brandon's signature on the PFAs for his customers Canike and Dockside satisfies the elements of its fraud claim. But there is no evidence that any aspect of those certifications were false at the time Brandon signed them. The record evidence suggests the contrary: it was only after the financing took place that Canike sought coverage elsewhere and Dockside stopped making payments. There is no evidence that Brandon had a role in either of those

customers' decisions. As to those customers, the plaintiff has not offered any evidence on elements one through four.

There is simply no evidence of fraud by Brandon as to the two PFAs executed by Werner Landscaping or Myers Landscape. Nor is there any evidence that Brandon was responsible for the funds the plaintiff sent to LISA on the other PFAs that were misappropriated. Joanna Dellin's "belief" that Brandon was aware that Karen Larson allegedly was processing fraudulent PFAs is not enough to create a fact question. *Tagget v. Eaton Corp.*, No. 00-10016, 2001 WL 1397289, at *3 (E.D. Mich. Nov. 7, 2001) (citing *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir. 1993)).

The plaintiff argues that Karen sent Brandon to retrieve fraudulent payment coupons from client Victorian Gardens. The Victorian Gardens account is not identified as one involving a fraudulent PFA. Moreover, it is not clear how an employee sent to recover payment coupons in itself shows any knowledge of a fraudulent purpose on Brandon's part, especially as to the other PFAs involved in this lawsuit. The plaintiff also argues that Brandon's research of other premium finance companies somehow shows a fraudulent purpose, but it is not clear how. A party opposing a motion for summary judgment must designate *specific* facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The evidence that Brandon went looking for other premium finance companies — an entirely lawful activity — does not suffice. Nor will evidence that Brandon should have been alerted to "red flags," when there is nothing tying him to the actual fraudulent conduct. A jury cannot find him responsible for fraud based on someone's unsupported "belief" that Brandon Larson might have been aware that fraud was occurring at LISA.

-15-

The plaintiff points out that Brandon Larson testified that "red flags" were raised when Werner and Myers contacted him about the PFAs that he did not arrange. However, Brandon testified that he addressed the issues as soon as they came to his attention, reported the problems to his superiors, and resolved the problems on the same day he learned of them. The plaintiff has not offered evidence to contradict those assertions. Brandon freely admitted that the PFAs should not have been created, but there is no evidence in the record that he was the one that generated them or had any hand in any other fraudulent acts.

Because there is no evidence establishing a genuine issue of fact on all the elements of the plaintiff's fraud claim against Brandon, he is entitled to summary judgment on that count.

3.

The plaintiff's conversion claim against Brandon suffers from the same ailments.

Under Michigan law, common law conversion is a tort, which is defined as "'any distinct act of domain wrongfully exerted over another's personal property in denial or inconsistent with the rights therein.'" *Dep't of Agriculture v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 13-14, 779 N.W.2d 237, 244 (2010) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (1992)). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.* at 15, 779 N.W.2d at 245 (citing *Foremost*, 439 Mich. at 391, 486 N.W.2d at 606). Statutory conversion is the same as common law conversion, with the added element that the property must have been converted to a defendant's "own use." Mich. Comp. Laws § 600.2919a(1)(a); *Aroma Wines*, 497 Mich. at 353, 871 N.W.2d at 145.

The plaintiff's entire theory of liability for conversion is based on the premise that Brandon was a DRLP for LISA. As noted above, however, he did not agree to assume those responsibilities. Nor is there any evidence that he (as distinguished from LISA) came into possession of any of the funds advanced by Prime Rate. Brandon is entitled to summary judgment on the conversion claim.

4.

In Count IV of the amended complaint, the plaintiff alleges that the defendants, including Brandon, were negligent in their supervision of LISA employees, thereby allowing the fraudulent conduct to occur. Negligent supervision, like all negligence claims, requires proof of a duty, breach, causation, and damages. *Stacy v. HRB Tax Grp., Inc.*, 516 F. App'x 588, 589 (6th Cir. 2013) (citing *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 17, 20 (2000)). In a negligent supervision claim, the first two elements are based on the duty of care imposed on an employer in the hiring and supervision of employees, "such that an employer may be liable if he knew or should have known that an employee had criminal tendencies . . . and placed that employee in a position to meet members of the public." *Gathing v. MERS, Inc.*, No. 09-07, 2010 WL 889945, at *18 (W.D. Mich. Mar. 10, 2010) (citing *Hersh v. Kentfield Builders, Inc.,* 385 Mich. 410, 412-16, 189 N.W.2d 286, 287-89 (1971)).

There is no evidence in this record that Brandon hired or supervised anyone at LISA, other than his personal assistants (Martha Bledsoe and Nancy Gandolfi) and account manager Janice Reed, who are not accused of any fraudulent conduct. The plaintiff argues that Brandon's status as a DRLP establishes his responsibility for the fraud; but, for reasons discussed earlier, that will not suffice. Brandon is entitled to summary judgment on that claim.

III.

The plaintiff seeks to file a second amended complaint to add the allegation that Brandon Larson "participated in, directed and/or supervised" the wrongful behavior at LISA. Brandon objects to amending the complaint to add new theories of liability after the close of discovery because he would be prejudiced and it would be futile.

Under Federal Rule of Civil Procedure 15(a)(2), a party seeking to amend the pleadings at this stage of the proceedings must obtain leave of court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). A "party requesting leave to amend must 'act with due diligence if it wants to take advantage of the Rule's liberality.'" *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (quoting *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995)).

Brandon accurately observes that the plaintiff had ample opportunity to file an amended complaint before the close of discovery, and well before Brandon filed his motion for summary judgment. The plaintiff took Brandon's deposition in December 2015 and January 2016 and was aware that he had conducted research for either Dellin or Karen Larson about other premium finance companies and that he had signed two of the PFAs. The "new" information that the plaintiff relies on is that Brandon picked up coupons from LISA client Victorian Gardens. However, as discussed above, that activity does not show fraud or conversion.

Brandon makes a compelling argument that he would be prejudiced by the plaintiff's attempt to shift its theory from broad liability as a DRLP to specific allegations of fraud and conversion. Those were not allegations that he was required to defend against previously. He likely would be disadvantaged by having to do so now without discovery.

However, the plaintiff does not seek to include new claims, but instead attempts to correct its omissions in its first amended complaint when it failed to allege that Brandon Larson specifically engaged in fraud and the conversion of funds. However, the evidence that the plaintiff relies on for those claims is in the record already, and it is insufficient. Cosmetically amending its complaint to add no more than conclusory allegations will not alter the outcome of the summary judgment motion. Even with the new allegations (which do no more than add a conclusory phrase to two paragraphs in the amended complaint), the plaintiff's evidence comes up short. Allowing the second amendment would be futile.

IV.

The evidence in the record creates a genuine issue of material fact on the plaintiff's breach-of-fiduciary claim as to the PFAs involving customers Canike Landscaping and Dockside Supply only, and no others. Defendant Brandon Larson is entitled to a judgment of dismissal as a matter of law on part of count I of the amended complaint, and the remaining counts as well. The plaintiff's request to amend it complaint a second time is untimely and the amendment would be futile.

Accordingly, it is **ORDERED** that the defendant Brandon Larson's motion for summary judgment [dkt. #74] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that count I of the amended complaint, except as to the claims involving customers Canike Landscaping and Dockside Supply, and counts II, III, and IV of the amended complaint are **DISMISSED WITH PREJUDICE** as to defendant Brandon Larson, **ONLY**.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiff's motion for leave to file a second amended complaint [dkt. #81] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 27, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 27, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI