UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME RATE PREMIUM FINANCE
CORPORATION,

               Plaintiff,               Case Number 14-12397
                                                 Honorable David M. Lawson
v.

KAREN E. LARSON, Individually and as
Personal Representative of the Estate of
KEITH A. LARSON, Deceased,

               Defendants.
_____/

**<u>ORDER DENYING DEFENDANT'S MOTION FOR CONTINUANCE AND
GRANTING PLAINTIFF'S ORAL MOTION FOR DEFAULT JUDGMENT</u>**

A jury trial in this case was scheduled to begin at 8:30 a.m. on August 14, 2018. The case had been scheduled for trial on five previous occasions, but adjourned at the defendants' request, sometimes over the plaintiff's objection. On the eve of trial, defendant Karen Larson (for herself and as personal representative of her deceased husband's estate) filed a motion seeking an adjournment of the trial for at least ninety days, alleging that her health presently renders her physically unable to attend trial. The motion was preceded by 12 days with a letter that the defendant emailed to chambers demanding that the case be dismissed and asserting that she was physically infirm. That letter was accompanied by a work excuse slip purportedly issued by the "Mathews Medical Center" in Troy, Michigan.

Larson did not appear for the scheduled trial at 8:30 a.m. The Court waited until approximately 9:20 a.m. to provide her an opportunity to make an appearance. The Court thereafter held a hearing on the defendants' motion, giving plaintiff's counsel an opportunity to respond and move for relief in light of Ms. Larson's absence. The plaintiff opposed any further delays and then

moved to strike the defendants' answer to the amended complaint, strike their jury demand, enter default against Ms. Larson, and proceed with a bench trial on damages. After making findings on the record, the Court denied the defendants' motion for a continuance. The Court also struck the defendants' pleadings in opposition to the amended complaint, found the defendants in default, determined that the material allegations in the amended complaint were admitted, and granted a default judgment. Although the plaintiff sought a sum certain in the amended complaint, the Court acquiesced to the plaintiff's request to offer evidence of damages, and then granted an award in the amount requested in the amended complaint for the reasons stated on the record and those summarized below.

I.

"[T]he district court enjoys 'a great deal of latitude' in scheduling matters." *Gerber v. Veltri*, 702 F. App'x 423, 428 (6th Cir. 2017) (quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983)). The denial of a request to adjourn a trial is erroneous "only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Ibid.* (citing *Franklin v. Bradshaw*, 695 F.3d 439, 452 (6th Cir. 2012). There is no "mechanical test[]" applicable to a request for a continuance. *Ibid.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Instead, the propriety of the Court's exercise of discretion when faced with a continuance motion, *see Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 738 (6th Cir. 2000) (stating that "[t]he denial of a motion for continuance is . . . reviewed for abuse of discretion"), "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied," *Gerber*, 702 F. App'x at 428 (quoting *Ungar*, 376 U.S. at 589).

There are several reasons why the Court has found that Larson has not presented a valid basis for adjourning the trial yet again. Larson's principal excuse for not attending the trial focused on her physical condition. She alleged that she had suffered a fall some weeks earlier at the Oakland County, Michigan probate court while litigating another matter, and that she fractured her ribs and struck her head. When she made that assertion in the *ex parte* letter emailed to the Court on August 1, 2018, the Court responded with an order docketing the letter, cautioning Larson against such one-sided contacts, and warning her that if she intended to make a formal request for relief, it must be by motion and properly supported by proof. *See* dkt. #159.

As noted above, Larson's letter included a work excuse slip allegedly from the "Mathews Medical Center" in Troy, Michigan. The slip lacked an identifiable signature and apparently was drafted by two individuals with different handwriting. The slip was dated "7/27/18," and stated that Larson "will need to be off work for a month till [*sic*] 8/27/18." Larson's motion for continuance was accompanied by an unsigned letter stamped with the name "Dr. Mazin Yonan." That letter was typed on letterhead of the "Mathew's Medical Center"; the clinic's name was spelled differently on the letter and on the work excuse slip. Moreover, the letter itself used terminology and phrasing that are atypical of a doctor's note. The letter made reference to a police report that documented Larson's fall at the Oakland County court. However, there was no police report presented with the motion or otherwise, or any other proof that the fall accident had occurred.

The Court has good reason to question the authenticity of the work excuse slip and the letter based on their facial inconsistencies and content. What's more, though, is that the plaintiff has accused Larson in its amended complaint of forging premium finance applications of Larson's insurance customers, and those allegations are well supported by the plaintiff's evidence and a

finding by the Michigan Insurance Commissioner. The excuse slip, the letter, or both likely are not genuine; rather, they appear to be another product of Larson's invention. They do not constitute sufficient proof of Larson's incapacitating injuries. Larson has not backed up her claim of physical incapacitation adequately as a justifiable request to delay the trial.

Larson's eleventh-hour request for another trial adjournment also is part of a pattern of delay through which she has sought to avoid confronting the plaintiff's allegations of fraud leveled against her. The original complaint in this case was filed on June 19, 2014. On July 25, 2014, Ms. Larson and her now-deceased husband Keith Larson filed a voluntary petition for Chapter 13 bankruptcy protection in this district. On August 5, 2014, the Court entered an order staying the case during the pendency of the Larsons' bankruptcy proceedings as required under the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(1). On December 29, 2014, the plaintiff moved to reopen the case after learning that the bankruptcy court dismissed the Larsons' petition earlier that month under 11 U.S.C. § 1307(c) for failure to comply with bankruptcy procedures. The Court granted the motion, reinstated the case, and directed the clerk's office to issue new summonses.

On February 5, 2015, the Clerk of Court entered default against the Larsons for failure to plead and otherwise defend. The plaintiff subsequently moved for default judgment, and the defendants moved to set aside the clerk's entry of default. The defendants, who were represented by attorney Dean Koulouras at the time, asserted that the plaintiff never personally served Ms. Larson with copies of the summons and complaint. They argued that service was effectuated improperly on Mr. Larson, who suffered from dementia and was incompetent to accept service on behalf of the defendants. After hearing argument from both sides on the cross motions, the Court

entered an order granting the defendants' motion to set aside the clerk's entry of default and denying the plaintiff's motion for default judgment.

On June 4, 2015, based on the stipulation of defense counsel, the Court allowed the substitution of attorney Edward J. Gudeman as counsel of record for the defendants in place of the defendants' first attorney, Dean Koulouras. On June 18, 2015, attorney Mark B. Dickow filed an appearance as co-counsel for the defendants. Around that time, the Court entered a scheduling order, closing discovery on December 31, 2015 and setting a trial date of June 14, 2016. The plaintiff filed an amended complaint on July 10, 2015, which the defendants timely answered. The defendants' answer included a jury demand.

On January 14, 2016, the defendants' second set of lawyers, attorneys Gudeman and Dickow, moved for permission to withdraw as counsel for the defendants, citing, among other concerns, that the Larsons falsely accused counsel of wrongdoing and failed to adhere to the terms of their retainer agreement. The Court granted the attorneys' request and allowed the defendants to obtain replacement counsel by February 25, 2016, staying the case until that date. On February 23, 2016, the parties filed a stipulation to extend the stay and the deadline for the defendants to obtain new counsel. The stipulation explained that Ms. Larson's medical condition impaired her ability to hire replacement counsel and that an upcoming surgery would further impede her search. The Court granted the parties' request and extended the stay and deadline to obtain new counsel to June 1, 2016. In early June 2016, attorneys Samuel Gun and Martin Leaf filed appearances on behalf of the Larsons. The Court thereafter entered an amended scheduling order, setting a trial date of January 31, 2017.

Things appeared to be going smoothly for a short while as the case proceeded through discovery and the filing of dispositive motions and motions *in limine*. However, on January 6, 2017, the defendants filed an emergency motion to adjourn trial. In addition to defense counsels' scheduling conflicts, the motion indicated that Mr. Larson's health dramatically deteriorated in December and that he was on life support. The defendants provided verified medical documentation to support their request. The plaintiff opposed the motion, noting that at that point, trial had been delayed approximately six months. The Court nevertheless granted the defendants' request and adjourned the trial to May 30, 2017.

On March 2, 2017, attorneys Gun and Leaf filed a joint motion to withdraw as counsel for the defendants. The attorneys alleged that a "critical, irreconcilable breakdown in the attorney client relationship" made continued representation impossible, noting that the issue was not a matter of remuneration. *See* dkt. #101. Ms. Larson filed a rambling response, asserting, among various allegations, that Mr. Gun and Mr. Leaf harassed and intimidated her. After a hearing on the attorneys' motion and reviewing the parties' submissions, the Court found that Mr. Gun and Mr. Leaf had established good grounds to support their withdrawal. The Court once again stayed the case and allowed the defendants to obtain replacement counsel by May 25, 2017.

On June 2, 2017, the defendants filed a copy of another voluntary petition for Chapter 13 bankruptcy, prompting the Court to administratively close the case for a second time. Despite the closed status of the case, Ms. Larson filed a "motion for relief" requesting that her former attorneys Gun and Leaf be fined and required to pay Mr. Larson's medical bills, as they were allegedly responsible for his incapacity. At the time, Mr. Larson had been on life support for approximately six months. The Court construed Ms. Larson's request as seeking relief from the order allowing Mr.

Gun and Mr. Leaf to withdraw. The Court denied Ms. Larson's motion, noting that her factual assertions were shambolic and that she failed to established good grounds for granting the relief she sought. The Court also found that Ms. Larson had submitted an audio tape recording of a meedting to support her claims against Leaf and Gun, but that the tape's provenance was "dubious." *See* dkt. #142.

On December 18, 2017, the plaintiff filed a motion to reinstate the case as the bankruptcy court had once again dismissed the Larson's petition under 11 U.S.C. § 1307(c). In its motion, the plaintiff also notified the Court that Mr. Larson passed away on August 2 and that Ms. Larson had been appointed personal representative of his estate. On January 4, 2018, the Court reopened the case and directed the parties to appear for a status conference on January 29. Ms. Larson did not attend the conference. The Court once again entered an amended scheduling order, setting trial to begin on April 24, 2018. Ms. Larson thereafter was substituted as personal representative of the estate of Keith A. Larson, in place of her husband.

When the Court learned that Ms. Larson filed a third bankruptcy petition on March 28, 2018, the Court entered an order staying the case, but this time for only 30 days because Larson had filed an earlier bankruptcy petition within the past year. *See* 11 U.S.C. § 362(c)(3)(A). The Court ordered that the stay would be lifted on April 29 unless extended upon motion by a party or further order of the Court. Consistent with its stay order, the Court adjourned trial to May 22, 2018. On April 30, Ms. Larson filed a motion to continue the stay, asserting that her bankruptcy petition would be resolved on the merits this time, but stating no relevant grounds for granting a continuance. The Court denied Ms. Larson's request and directed Ms. Larson to furnish to plaintiff's counsel any

contribution to the proposed joint final pretrial order she wished to present at trial by May 11, as required by the scheduling order.

On May 16, Ms. Larson filed a motion to postpone trial by at least 30 days, this time indicating that her son, Brandon Larson, remained in critical condition following a serious car accident on April 24. Ms. Larson represented that she could not prepare for trial as her son was on life support and required around-the-clock care. Her request was supported by reliable documentation that confirmed Brandon's fragile state. Sympathetic to Ms. Larson's circumstances but aware of the mounting prejudice to the plaintiff, the Court adjourned the trial to August 14, 2018. In its order, the Court expressly noted that no additional continuances would be granted. The Court's final pretrial order further directed the parties to confer and submit all trial documents by August 1. Ms. Larson refused to cooperate.

With trial looming, Larson filed the present continuance motion. It represents another attempt to delay this trial further. And it falls within a pattern of delaying tactics that have included other or exaggerated medical excuses, fomenting disputes with the last five lawyers who have attempted to represent Ms. Larson, abusing the bankruptcy process, and presentation of questionable and inauthentic evidence to support arguments favoring delay. The Court finds no merit in the present motion and will deny it.

II.

On August 14, 2018, plaintiff's counsel appeared in Court at 8:00 a.m. prepared for trial. Because Ms. Larson failed to appear, the plaintiff moved to strike her pleadings in opposition to the amended complaint and proceed to a hearing on damages.

As the Court noted in a previous order, failure to obey a pretrial order or to participate meaningfully in a pretrial conference may result in sanctions, including the entry of default judgment against the disobedient party. Fed. R. Civ. P. 16(f), 37(b)(2)(A)(vi). "[D]istrict courts have discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction." *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003). In determining whether default judgment is appropriate, courts are to consider the following four factors: "(1) evidence of willfulness or bad faith; (2) prejudice to the adversary; (3) whether the violating party had notice of the potential sanction; (4) whether less drastic sanctions have been imposed or ordered." *Phillips v. Cohen*, 400 F.3d 388, 402 (6th Cir. 2005) (citing *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)). *See also Federal Ins. Co. v. Fairbotham*, No. 16-11390, 2017 WL 4163643, at *1 (E.D. Mich. Sept. 20, 2017) ("[D]efault judgment as a sanction is most appropriate where there is a pattern of non-compliance with court orders.") (citing *Secs. & Exchange Comm'n v. Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C. 2001)).

Larson's failure to appear at trial, and her refusal to cooperate with plaintiff's counsel in the preparation of trial documents was willful. Larson made no attempt to prepare or be present for trial. The pattern of delay and avoidance noted above suggests an intention to interfere with the orderly scheduling of the disposition of this case at all costs — even to the extent of presenting false evidence to the Court. That amounts to bad faith.

The plaintiff has expended considerable effort and resources readying itself for trial on at least five separate occasions. In responding to the defendants' motion, plaintiff's counsel observed on the record that her client's representative, who was present in the courtroom, had traveled from South Carolina to testify, and that another witness was scheduled to arrive later that morning.

Plaintiff's counsel also noted that Ms. Larson had not cooperated in discovery and failed to prepare jury instructions and trial documents. The defendants' failure to cooperate and participate in the proceedings even up to the brink of trial caused the plaintiff considerable prejudice.

Larson was well aware that her refusal to comply with the Court's orders could result in a default judgment against her. As noted above, on August 1, Larson emailed the Court a letter, apparently dictated by her, representing that she had suffered a serious slip and fall injury in July that prevented her from attending trial. As mentioned earlier, the excuse slip accompanying the letter was of questionable authenticity. The communication was not filed on the docket. In its order directing the Clerk of Court to file Ms. Larson's correspondence on the docket, the Court indicated that absent a proper motion supported by reliable documentation, trial would proceed on August 14. The Court also explicitly warned Ms. Larson that failure to abide by the Court's orders or appear in court as directed would be met with severe sanctions, including entry of default judgment in favor of the plaintiff. Despite the Court's final admonishment, Larson failed to appear for trial. Although she has been representing herself in the later stages of this lawsuit, and in some quarters she has been allowed considerably more latitude that an attorney might expect to receive, "*pro se* litigants are [still] subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders." *Maus v. Ennis*, 513 F. App'x 872, 878 (11th Cir. 2013) (citations omitted).

Lesser sanctions have been considered in the past when the defendants in this case have not adhered to the rules of procedure and the orders of this Court. However, no other sanction short of a case-dispositive order will bring the defendants into compliance and move this case to disposition. *See Maus*, 513 F. App'x at 879 ("Nothing in the record suggests that a lesser sanction would have

been adequate, as [the *pro se* defendant] had already been admonished for his misconduct, and the court repeatedly warned him that further misconduct could result in sanctions, including a default judgment."). A court may impose an array of sanctions if a party "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(A), (C). Those sanctions include "striking pleadings in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). Larson has exhibited conduct that undermines the integrity of the judicial process, and she has been determined to derail the proceedings. The defendants' answer to the amended complaint will be struck; a default judgment is justified.

## III.

The amended complaint alleges four counts: Defalcation (Count I); Fraud (Count II); Conversion (Count III), and Negligent Supervision (Count IV). In essence, the plaintiff contends that Karen and Keith Larson (owners and operators of Larson's Insurance Solutions Agency, Inc.) perpetrated a fraudulent scheme described in the amended complaint. The scheme consisted of presenting phony insurance premium finance applications to the plaintiff, not applying those loan proceeds to pay for the insurance policies, and pocketing the money instead. The plaintiff alleges in the amended complaint that the defendants failed to apply or repay loan proceeds totaling $321,510.16, and converted those funds to their own use. Count III of the amended complaint alleges both common law and statutory conversion. Under Michigan law, a person who suffers damages caused by another person converting property to his or her own use "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." Michigan Compiled Laws § 600.2919a(1).

Once the defendants' answer is struck, all the well-pleaded allegations of the amended complaint are taken as true. Under some circumstances, the Court must conduct a hearing to determine the amount of damages. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). For instance, a hearing is required "[w]here damages are unliquidated," since a default would result only in the admission of liability. *Ibid.* But here, the damages are set forth explicitly in the amended complaint, which asks for a sum certain. Therefore, no damages hearing is necessary. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (noting that a damages hearing on a default judgment is not necessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation"); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) ("As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation.").

Nonetheless, the Court heard testimony from Patti Smith, a senior vice president of the plaintiff corporation, who described the unpaid balances on the 14 premium finance agreements that were part of the defendants' fraudulent scheme. The amount owing was identical to the sum stated in the amended complaint. The Court also heard testimony from the defendants' former employee, Joanna Dellin, who explained in some detail that Ms. Larson orchestrated the scheme to defraud the plaintiff, and that she used the proceeds to pay other business and personal expenses. The Court found that the proofs supported the prayer for relief in the amount of $321,510.16, and that all the elements for statutory conversion were satisfied.

IV.

For the reasons stated above, the defendants have not convinced the Court that a good reason existed to adjourn the trial once more. The defendants have not offered good reasons for their failure to cooperate in the preparation of trial documents or to appear at trial. All the relevant factors favor entry of a default judgment against the defendants for their failure to appear and otherwise comply with the Court's orders.

Accordingly, it is **ORDERED** that the defendant Karen Larson's motion for continuance [dkt. #165] is **DENIED**.

It is further **ORDERED** that the plaintiff's oral motion for default judgment [dkt .#166] is **GRANTED** for the reasons stated on the record.

It is further **ORDERED** that judgment will enter in favor of the plaintiff and against the defendants in the amount of three times the actual damages stated in the amended complaint and established by the testimony, totaling $964,530.48.

It is further **ORDERED** that if the plaintiff seeks attorney's fees, it may file a motion under Federal Rule of Civil Procedure 54(d) within the time allowed by that rule and the Eastern District of Michigan Local Rule 54.1.2.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 16, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 16, 2018.

                              s/Susan Pinkowski
                              SUSAN PINKOWSKI