UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME RATE PREMIUM
FINANCE CORPORATION, INC.,

                Plaintiff,                    Civil Action No. 14-12397
                                              Honorable David M. Lawson
v.                                       Magistrate Judge David R. Grand

KAREN E. LARSON, Individually and as
Personal Representative of the Estate of
KEITH A. LARSON, Deceased, and
ADRIAN LEE CARRANZA,

                Defendants.

and

BRANDON LARSON, GP INSURANCE
AGENCY, INC., and INSUREPLEX
MARKET SOLUTIONS, INC.,

                Garnishee-Defendants.

_____/

## REPORT AND RECOMMENDATION TO
## OVERRULE OBJECTION TO GARNISHMENT [652]

Before the Court is an Objection to Garnishment filed on July 11, 2019, by

Garnishee-Defendant GP Insurance Agency, Inc. ("GP"). ECF No. 652, PageID.5500.

Plaintiff Prime Rate Premium Finance Corporation, Inc. ("Prime Rate") filed a response to

GP's objection, along with a supporting affidavit. ECF No. 655, PageID.5526; ECF No.

656, PageID.5550. An Order of Reference was entered on July 15, 2019, referring this

matter to the undersigned for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).  ECF No. 654, PageID.5524.  The Court heard oral argument on September 18, 2019.  For the reasons set forth below and on the record during the hearing, the Court **RECOMMENDS** that GP's objection be **OVERRULED**.

## I.    REPORT

### A.    Background

On February 28, 2019, Prime Rate obtained a Default Judgment against GP in the amount of $300,000.  ECF No. 365, PageID.4358.  On May 6, 2019, Prime Rate obtained a Writ of Garnishment (the "Initial Writ") for service against Flagstar Bank ("Flagstar"). ECF No. 497, PageID.5205.  On May 20, 2019, Flagstar filed a Garnishee Disclosure, indicating that it was not indebted to GP pursuant to the Initial Writ because it had "No Account on File."  ECF No. 496, PageID.5203.

Because Prime Rate continued to believe that GP had at least one bank account at Flagstar, despite receipt of Flagstar's Garnishee Disclosure, it obtained a new Writ of Garnishment (the "Second Writ") directed to Flagstar on June 14, 2019.  ECF No. 648, PageID.5494.  On June 21, 2019, Flagstar served Prime Rate and GP with a Garnishee Disclosure in response to the Second Writ, indicating that Flagstar was holding $23,067.65[1] from accounts owned by GP.  ECF No. 655, PageID.5543.  Subsequently, Flagstar served an Amended Garnishee Disclosure, acknowledging that it was indebted to GP at the time of service of the Initial Writ because it had GP's "Money – Checking Accts[.]"  ECF No.

---

[1] Subsequently, Prime Rate's counsel was advised that Flagstar was holding an additional $2,633.38 from accounts owned by GP (for a total of $25,701.03).

655, PageID.5545.[2]  On July 11, 2019, GP filed the instant objection, stating that it "objects to the Request and Writ for Garnishment, Garnishee, Flagstar Bank, as it [*i.e.*, the bank account in question] is a client trust account and not GP Insurance's money."  ECF No. 652, PageID.5501.

### B.    Analysis

M.C.R. 3.101(K)(2) addresses objections to garnishments, and provides, in relevant part, that objections must be based on one or more of the following: (a) the funds or property are exempt from garnishment by law; (b) garnishment is precluded by the pendency of bankruptcy proceedings; (c) garnishment is barred by an installment payment order; (d) garnishment is precluded because the maximum amount permitted by law is being withheld pursuant to a higher priority garnishment or order; (e) the judgment has been paid; or (f) the garnishment was not properly issued or is otherwise invalid.

As noted above, GP does not articulate the specific basis for its objection to the garnishment under M.C.R. 3.101(K)(2); rather, it simply asserts that the garnishment is improper because its Flagstar bank account is a "client trust account and not GP Insurance's money."  ECF No. 652, PageID.5501.  Even if such an objection was recognized under the law, however, the only "evidence" GP provided in support of this assertion is highly suspect, at best.  Specifically, GP provided Prime Rate's counsel with a

---

[2] At the hearing on this matter, Prime Rate's counsel advised that the reason for Flagstar's error was that it initially searched for "G P" (with a space between the two letters) when the entity's actual name begins "GP" (without a space).

3

purported (and unauthenticated) copy of a Flagstar bank account signature card, which indicates – in the top right corner – "CLIENT TRUST ACCOUNT."  ECF No. 655, PageID.5547.

But, Prime Rate has submitted a sworn affidavit from Amy Hollifield, a Flagstar bank representative, who indicates that (a) Flagstar has specific procedures in place for the establishment of trust accounts; (b) trust accounts are designated as such within Flagstar's system; and (c) signature cards for trust accounts at Flagstar also reflect when accounts are established as trust accounts.  ECF No. 656, PageID.5554.  Ms. Hollifield further avers that, according to Flagstar's records, none of GP's accounts at Flagstar were set up as trust accounts, and none of the signature cards for GP's accounts reflect that they are trust accounts.  *Id.*  Thus, it certainly appears that the signature card provided by GP was modified to add the words "CLIENT TRUST ACCOUNT," as the copy provided by Flagstar for the same account contains no such designation.  *Compare* ECF No. 655, PageID.5547 with ECF No. 656, PageID.5559.

Given these facts, GP has not established that the funds at issue are held in a "client trust account" or are otherwise exempt from garnishment.  Indeed, the only properly authenticated evidence before the Court demonstrates that the bank account in question is a simple checking account in GP's name.  GP has made no evidentiary showing whatsoever that all or even some of the funds in its Flagstar checking account are actually monies it is holding in a fiduciary capacity.  Therefore, GP's objection should be overruled, and Flagstar should be ordered to release funds pursuant to both the Initial Writ and the Second

4

Writ, in the total amount of $25,701.03.[3]

## II.     CONCLUSION AND RECOMMENDATION

For the reasons set forth above, as well as those set forth on the record at the hearing,

**IT IS RECOMMENDED** that GP's Objection to Garnishment **[652]** be **OVERRULED**.

Dated: September 20, 2019                         s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of*

---

[3] At the conclusion of the hearing in this matter, counsel for Prime Rate also requested – for the first time – an award of attorney's fees and costs.  Although the Court is troubled by the discrepancy between the signature cards submitted by GP and Flagstar, it is not persuaded that an award of sanctions is appropriate.  GP's counsel explained at the hearing that GP's business involves collecting premiums from clients on behalf of large insurers and remitting some significant percentage of those premiums to the insurer.  In this sense, at any point in time, the account could potentially contain monies that GP subjectively considers to be held for its clients and their insurers.  At the same time, GP failed to provide any evidence to establish such an arrangement, or that the account is utilized *exclusively* for this purpose, rather than as a regular business checking account that receives and/or holds monies from other sources.  Based on the foregoing, the Court declines to recommend awarding sanctions against GP.

*HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 20, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

6