UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME RATE PREMIUM FINANCE
CORPORATION,

        Plaintiff,                  Case Number 14-12397
v.                                           Honorable David M. Lawson

KAREN E. LARSON, Individually and as
Personal Representative of the Estate of
KEITH A. LARSON, Deceased, and
ADRIAN LEE CARRANZA,

        Defendants,

and

BRANDON LARSON and INSUREPLEX
MARKET SOLUTIONS, INC.

        Garnishee-Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT CARRANZA'S MOTION FOR SUMMARY JUDGMENT

Defendant Adrian Lee Carranza filed a document in this case entitled "Affidavit of Meritorious Defense," apparently in support of an effort to avoid liability to the plaintiff for a judgment obtained against defendant Karen Larson in the amount of $964,530.48, which remains unpaid. The Court views that filing as a motion for summary judgment. Because fact issues remain to be decided, the Court will deny the motion.

I.

The plaintiff seeks to seize and sell certain vehicles, which, it alleges, defendant Larson fraudulently transferred to Carranza to shield them from garnishment. The plaintiff's quest to collect its judgment brought it to Carranza, Larson's live-in boyfriend, when it uncovered evidence

that allegedly showed that Larson fraudulently transferred a 2009 Cameo recreational vehicle (the "trailer"), 2006 Pontiac Solstice, and 2008 Chevrolet Avalanche to Carranza to protect them from garnishment. The plaintiff alleges that those transfers violated Michigan's Uniform Voidable Transactions Act, Mich. Comp. Laws §556.34, *et seq.*

The Court entered an order on December 18, 2018 granting the plaintiff's motion to examine Carranza about the vehicles and restrain him from transferring the property. Carranza appeared for his examination, testified that he paid Larson $5,500 for the trailer and Pontiac Solstice, but did not produce any proof of payment as the examination order required. He also testified that he received the Chevrolet Avalanche from Larson's employee, Tyler McMeekan, but did not pay McMeekan for it. Shortly after the examination, the plaintiff filed an *ex parte* motion for an issuance of an order for Carranza to show cause why he should not be made a party to the case and for a temporary restraining order to protect the property. The Court granted the motion and entered an order requiring Carranza to appear. Carranza appeared but he failed to offer a legitimate reason to deny the plaintiff's request that he be added to the case. The Court added Carranza to the action and allowed Prime Rate to file a supplemental complaint to incorporate the addition, which it did on March 5, 2019. ECF No. 368. On August 27, 2019, Carranza filed an affidavit of meritorious defense, which the Court views as a motion for summary judgment.

II.

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To oppose that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). That is done by designating specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The submitted materials need not themselves be in a form that is admissible in evidence. *Celotex*, 477 U.S. at 324.

"The reviewing court must then determine 'whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Ibid.* (quoting *Matsushita*, 475 U.S. at 587).

In its supplemental complaint, the plaintiff alleges that Karen Larson intentionally and fraudulently transferred the trailer and two vehicles to Adrian Carranza to protect them from garnishment. Carranza's testimony that he paid $5,500 for the trailer and Solstice is supported by Michigan title applications for the trailer — indicating that Carranza paid Larson $3,000 for it — and the Solstice — indicating that Carranza paid Larson $2,500. But the plaintiff also demonstrated that Larson transferred the Avalanche to her employee, Tyler McMeekan, who subsequently gave it to Carranza. The plaintiff contends that Larson transferred the trailer and vehicles for less than their fair market values before this action was scheduled for trial in August 2018. Despite the transfers, the plaintiff alleges that Larson retained possession and control of

vehicles because she still lives with Carranza. Therefore, the plaintiff believes the transfers should be voided under the Michigan Uniform Voidable Transfer Act, Mich. Comp. Laws §566.1 *et seq.*, and that the Court should issue a writ of attachment against the trailer and vehicles, and sell them to distribute the proceeds to the plaintiffs.

Carranza, who is proceeding *pro se*, filed an affidavit of meritorious defense, which included a written account from Tyler McMeekan, Larson's employee who transferred the Avalanche, as well as bills and price quotes for the vehicles. According to McMeekan, Larson and Carranza had not known each other before the property transaction. Larson allegedly sold the vehicles only because she was desperate for money as she had to pay her attorney $6,000 to represent her regarding her son's power of attorney. She met with Carranza to sell him the Solstice and trailer for "$5,000" with a verbal agreement that if she paid him back by August 1, 2018, he would return the property. Strapped for cash, she never made the payment and Carranza kept the property, although they started dating by that point. McMeekan says that he recommended, and drafted, a receipt for the sale, but Carranza never received a copy because it "fell through the cracks." McMeekan apparently never provided receipt and one was not attached to the affidavit. After selling the trailer, McMeekan moved in with Larson "as due to personal circumstances she had taken [him] in," while Carranza lived in the trailer. Larson and Carranza then moved to another home and lived together in "late fall."

McMeekan claims to have driven the Avalanche frequently for work and liked it so much that he wanted to buy it. He structured an agreement with Larson where he would work off the purchase price of $2,500. But before he could work off the price, he got in an accident resulting in extensive damage of up to $6,000. Lacking insurance and ability to pay for the repairs,

McMeekan gave the car to Carranza for free because "it presented more of a liability . . . than an asset."

Although Carranza did not attach any receipts from Larson's transfer, he did provide some documentation. First, he provided a mechanic's statement quoting a price of $9,151.43, including labor, to repair the damaged Avalanche. On the estimate, Carranza wrote "I took the vehicle from Tylor for parts because he could not afford to have it fixed." Carranza also attached screenshots of price quotes for similar Avalanches and Solstices from unidentifiable websites. There are no URLs listed on either screenshot, and the screenshot quoting Solstice prices appears to have been taken from Windows Photo Viewer. According to the screen shots, 2007 Avalanches were apparently worth $5,900 and Solstices were worth $3,995. Finally, Carranza attached a service estimate for the Solstice, quoting a cost of $7,209.52, including labor, with a handwritten legend that says: "with knowledge about at time of purchase of other things wrong with the car that['s] why I offered her Karen Larson $2,000."

Federal courts apply state law rules for collecting judgments. Fed. R. Civ. P. 69(a). The Michigan Revised Judicature Act permits courts to adjudicate the disputed ownership of personal property that may belong to a judgment debtor. Mich. Comp. Laws 600.6128(1)-(2). When a judgment debtor transfers property, she bears the burden "to show that the transaction is in all respects bona fide." Mich. Comp. Laws 600.6131(1). And with transfers of gifts within one year of the action's commencement to the judgment debtor's family or close confidants, "the burden of proof shall be on the judgment debtor, or the person claiming title or right of possession, to establish that the transfer or gift from [her] was not made for the purpose of delaying, hindering, and defrauding creditors." Mich. Comp. Laws 600.6131(3).

The Michigan Uniform Voidable Title Transaction Act lays out the rules with respect to potentially fraudulent transfers. Property transfers are voidable when made "(a) with actual intent to hinder, delay, or defraud any creditor of the debtor" or "(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation" and the creditor "(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Mich. Comp. Laws 566.34(1)(a)-(b)(ii).

In determining actual intent, courts may consider the following factors: "(b) the debtor retained possession or control of the property transferred after the transfer," "(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit," "(h) the value of consideration received by the debtor was reasonably equivalent to the value of the assets transferred," "(i) the debtor was insolvent or became insolvent shortly after the transfer was made," and "(j) the transfer occurred before or shortly before a substantial debt was incurred." Mich. Comp. Laws 566.34(2)(b)-(j). Finally, "a transfer made . . . is voidable as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer." Mich. Comp. Laws 566.35.

In light of these rules, it is apparent that genuine issues of material fact remain regarding Larson's property transfer to Carranza. For one, there is an inconsistency in the defendant's own affidavit: Carranza claims to have purchased the trailer and Solstice for $5,500, but McMeekan contends that Larson sold them for $5,000. Perhaps this discrepancy can be chalked up to an error on McMeekan's part as Carranza testified that he paid $5,500 and the price was corroborated by the Michigan title transfer applications indicating such. But that question must be resolved by the factfinder.

Carranza also failed to address other material facts asserted by the plaintiff. For one, Carranza's affidavit is completely devoid of any price estimates, receipts, or market values for the 2009 Cameo trailer. The plaintiff attached an exhibit to its motion to show cause alleging that such trailers, according to RVT Price Checker, range between $22,950 and $77,613, averaging at about $44,315. That evidence suggests that the sale for $5,500 was far below fair market value. Further, the market valuations provided by Carranza for the Avalanche and Solstice are nearly impossible to verify because they do not indicate the sources or dates of the estimates. And there are other discrepancies: Carranza alleged that 2007 Avalanches were valued around $5,900 and Solstices were valued around $3,900. But Carranza did not acquire a 2007 Avalanche from Larson; according to the Michigan title documents, he acquired a 2008 Avalanche.

And finally, Carranza has not addressed the allegation that Larson still possesses and controls the vehicles. Carranza's affidavit corroborated the fact that he lived in the trailer and then subsequently moved in with Larson, but he neglected to mention whether Larson still possesses the property. With the facts presented, a reasonable juror could conclude that Larson still controls or possesses the property as she now lives with the person to whom she sold it.

III.

Because these factual disputes exist in the record, Carranza's Affidavit of Meritorious Defense is not sufficient to furnish him summary relief from the plaintiff's supplemental complaint.

Accordingly, the Affidavit of Meritorious Defense (ECF No. 661), construed as a motion for summary judgment, is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
Date: November 18, 2019                        United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on November 18, 2019.

                              s/Susan K. Pinkowski
                              SUSAN K. PINKOWSKI